LAW OFFICE OF ALEX KLEIN, PLLC.
3105 Church Avenue
Brooklyn, New York 11226
(718) 462-8700

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
SULTAN AL-ANESI,

                                               **Docket No: 18-cv-8439 (LAK)(GWG)**

                          Plaintiff,

            -against-

THE CITY OF NEW YORK, THE NEW YORK        **JURY TRIAL DEMANDED**
CITY POLICE DEPARTMENT, J. McKNIGHT,
and GLENN O'HEIR,

                        Defendants.
------------------------------------------------------------X

## AMENDED COMPLAINT

Plaintiff SULTAN AL-ANESI ("Plaintiff"), by and through his attorneys, the Law Office

of Alex Klein, PLLC., as and for his Complaint against Defendants THE CITY OF NEW YORK

("City"), THE NEW YORK CITY POLICE DEPARTMENT ("NYPD"), J. McKNIGHT

("McKNIGHT"), and GLENN O'HEIR ("O'Heir") (O'Heir, McKnight, City, and NYPD

collectively referred to herein as "Defendants"), alleges as follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this action to recover damages for the physical and emotional

injuries he suffered, as well as declaratory and injunctive relief, punitive damages, interest, and

reasonable attorneys' fees and costs, for false arrest and imprisonment under 42 U.S.C. § 1983

("Section 1983"), the Fourth and Fourteenth Amendments of the Constitution of the United States,

and the common law of the State of New York; use of excessive force under Section 1983, the

Fourth and Fourteenth Amendments of the Constitution of the United States, and the common law

of the State of New York; malicious prosecution under the common law of the State of New York; racial, ethnic, religious, and/or citizenship discrimination under Section 1983, 42 U.S.C. § 1981, and the Fourteenth Amendment of the Constitution of the United States; bias-based profiling under Section 14-151 of Title 8 of  the New York City Administrative Code ("New York Human Rights Law"); and assault and battery under the common law of the State of New York.

2.      Plaintiff, a Yemeni immigrant, was stopped by NYPD officers O'Heir and his partner, believed to be Officer Maria Maldonado ("Maldonado"), after allegedly jumping a subway turnstile.  Although Plaintiff's alleged infraction was small and he offered no resistance, he was nevertheless detained, taken under custody to a police station, beaten by O'Heir, arrested, and imprisoned for 16 hours.

## PARTIES, JURISDICTION, AND VENUE

3.      At all relevant times herein, Plaintiff was and is a resident of the State of Virginia, Loudoun County.

4.      At all relevant times herein, Defendant City was and is a government municipality duly organized under, and existing by virtue of, the laws of the State of New York.

5.      At all relevant times herein, Defendant NYPD was and is an instrumentality of the City, acting under the authority of the City and existing by virtue of the laws of the City and the State of New York.

6.      Upon information and belief, at all relevant times herein, Defendant McKnight was and is a citizen of the State of New York, and/or transacts business within the State of New York and maintains substantial contacts therein. Upon information and belief, at all relevant times herein McKnight was and is a police officer of the NYPD (full or partial badge number 22630) and an employee of the City.

7.      Upon information and belief, at all relevant times herein, Defendant O'Heir was

2

and is a citizen of the State of New York, and/or transacts business within the State of New York and maintains substantial contacts therein. Upon information and belief, at all relevant times herein O'Heir was and is a police officer of the NYPD and an employee of the City.

8.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, in that this action arises under Section 1983 and the Constitution of the United States.  This court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as those claims are related to Plaintiff's federal claims and form part of the same case or controversy.

9.      This Court has personal jurisdiction over the City in that the City is incorporated in the State of New York.

10.      This Court has personal jurisdiction over the NYPD in that the NYPD has its principal place of business within the State of New York.

11.      This Court has personal jurisdiction over O'Heir and McKnight in that they are citizens and residents of the State of New York, regularly do or solicit business or engage in other persistent course of conduct within the State of New York, and/or have committed tortious acts within the State of New York as alleged herein.

12.      Venue is proper pursuant to, among other grounds, 28 U.S.C. § 1391(b), as the events giving rise to Plaintiff's claims occurred in this district.

## JURY DEMAND

13.      Plaintiff demands a trial by jury of all issues so triable in this action.

## STATEMENT OF FACTS

14.      Plaintiff is a Saudi-born Yemeni citizen of Arabic ethnicity and Islamic religious background.  At all times relevant herein, he was and is a legal immigrant authorized to work in the United States.

3

15.     Plaintiff obtained his legal immigrant status by successfully applying for political asylum in the United States.  Since approximately 2011, his home country of Yemen has been subject to an extended violent internal conflict that has made the nation severely dangerous for Plaintiff, such that he would likely be at risk of death or injury if he returned.

16.     Upon information and belief, O'Heir is a U.S. citizen of Caucasian or other non-Arabic ethnicity.

17.     Upon information and belief, Maldonado is a U.S. citizen of Caucasian or other non-Arabic ethnicity.

18.     On or around June 20, 2017, shortly after 12:00 A.M., O'Heir and Maldonado (collectively "Officers") approached Plaintiff while he was waiting for the train at the 145th Street subway station on the D line and demanded his identification. Plaintiff duly provided his United States Employment Authorization Card, which listed his country of birth (Saudi Arabia).

19.     After taking and reviewing his identification, the Officers accused Plaintiff of jumping the subway turnstile, and told him he would have to come with them to the police station.

20.     The Officers then took Plaintiff under custody through the subway station and upstairs to the Transit District 3 police station ("Station").  Maldonado took Plaintiff's identification into the Station, leaving Plaintiff outside the station with O'Heir.

21.     Plaintiff was surprised and concerned by the Officers' actions. He did not believe that he had been acting in suspicious or dangerous manner in the subway station or on the platform. Furthermore, it was his understanding that the penalty for jumping a turnstile was a small fine, and that the police would simply issue a ticket on the spot rather than detain a suspect or take them anywhere. Accordingly, after being detained and brought to the Station Plaintiff became very nervous and concerned about what he perceived as heightened treatment and suspicion towards him.

4

22.     After Maldonado disappeared into the Station with his identification, O'Heir patted down Plaintiff for weapons or contraband. After being patted down, Plaintiff retrieved his cell phone to record what he increasingly perceived to be unusual treatment from the police. After Plaintiff retrieved his phone, O'Heir asked Plaintiff what he was doing, and Plaintiff replied that he was going to record what was happening.

23.     After Plaintiff said that he was going to record what was happening, O'Heir grabbed Plaintiff's arm holding the phone, wrested the phone from his grasp, and threw it to the ground. Then O'Heir threw Plaintiff backwards to the ground, such that the back of Plaintiff's head banged against the concrete floor. O'Heir then rolled Plaintiff onto his stomach, grabbed Plaintiff by the back of the head, and banged his head against the concrete floor again. O'Heir then pinned Plaintiff to the ground and cuffed his hands behind his back.

24.     Maldonado emerged from the Station around the time O'Heir handcuffed Plaintiff, and together the Officers marched Plaintiff into the Station.  Another officer asked Plaintiff if he was "stupid," and told the Officers to put Plaintiff in a holding cell.

25.     Plaintiff was in tremendous pain from O'Heir's attack.  He could feel wounds on the front and back of his head, and his head was bleeding.  Plaintiff also felt severe pain in his back and neck, nausea, and dizziness.

26.     Plaintiff asked to be taken to a hospital, but was told by another officer that if he wanted to go to a hospital he would get 3 more days in jail.

27.     For approximately the next 4 hours, Plaintiff repeatedly pled to be taken to a hospital, stating that his head was bleeding and he was in tremendous pain.  The officers present did not noticeably respond to his pleas or check on the degree of his injuries.

28.     At approximately 4 AM, Plaintiff was told that an ambulance was waiting outside to take him to a hospital.  Police personnel (not either of the Officers) escorted Plaintiff to the

ambulance, rode with him to the hospital, and checked him into the emergency room.  At the

hospital, Plaintiff was treated for the forehead injury he suffered when O'Heir bashed his head

onto the concrete.  After approximately 2 hours at the hospital, Plaintiff was taken under custody

back to the Station and returned to the holding cell.

29.     Plaintiff waited in the cell until approximately 8:30, whereupon he was told he was

going to be taken to court.  Plaintiff was taken to central booking, processed, and put into a

holding cell with approximately 10 other detainees.

30.     Plaintiff was kept in the holding cell until approximately 3 PM, or roughly 6 hours.

During this time Plaintiff continued to feel pain and other symptoms of his abuse, including

dizziness and nausea.  Plaintiff was also confused by his treatment and afraid of the police, the

court, his fellow detainees, and the effect this might have on his immigration status.

31.     At approximately 3 PM, Plaintiff was summoned from the holding cell to meet

with a public defender regarding his charges.  The attorney told Plaintiff that he was being charged

with theft of services (a Class A misdemeanor), resisting arrest (a Class A misdemeanor), and

third-degree criminal trespass (a Class B misdemeanor).  For allegedly jumping a subway

turnstile, Plaintiff was being charged with crimes for which he could potentially be sentenced to

over two years' imprisonment, not to mention have his immigration status revoked and potentially

sent back to Yemen where his life may be forfeit.

32.     Plaintiff told the attorney that he had been beaten by O'Heir.  The attorney did not

seem surprised or alarmed at this, and simply told Plaintiff that some police officers are bad

officers.  Despite Plaintiff's narrative of the abuse he suffered and his obvious physical injuries,

the attorney told Plaintiff that he had to plead guilty.

33.     Accordingly, Plaintiff pled guilty at his arraignment before the court and was

released on his own recognizance shortly thereafter. Plaintiff finally left the courthouse at

approximately 4 P.M., free from police custody for the first time in approximately 16 hours.

34.     Plaintiff vomited immediately after leaving the courthouse, and continued to vomit and feel nausea and dizziness for the next several days.  On a subsequent medical visit he was told that he likely had suffered a concussion from O'Heir's abuse.

35.     Plaintiff also continued to feel severe pain in his head, neck, and back for the next several days.  The pain in his neck and back was so limiting that Plaintiff had to go through physical therapy.

36.     Plaintiff returned to New York in August 2017 for his trial.  The judge reduced the charges against him to disorderly conduct (a non-criminal violation), for which she sentenced him to the time he had already served.  The abuse Plaintiff suffered was never addressed.

37.     In New York, the vast majority of apprehended turnstile jumpers are given a civil summons and sent to the New York Transit Adjudication Bureau to pay a $100 fine.  A June 2017 article of *The New York Times*[1] states that alleged jumpers are arrested and criminally charged only about 25 percent of the time, and only then when the alleged jumper lacks valid identification and/or has a history of similar arrests.  This information is offered in the context of an article announcing that the New York City district attorney's office will no longer criminally prosecute fare evaders in most circumstances.  The article also notes that criminal prosecution of fare evaders has disproportionately impacted immigrants and people of color.

38.     Upon information and belief, the official policy of the NYPD regarding fare evasion and other transit violations is as follows:

   a.   First, upon stopping any person for a transit violation, the officer requests identification from the person.  If the person cannot or will not produce valid

---

[1] Available online at https://www.nytimes.com/2017/06/30/nyregion/subway-fare-beating-new-york.html (last accessed January 8, 2018).

identification, the officer may (but is not required to) arrest the person on that basis.

b. Upon obtaining valid identification, the officer calls in a "10-75 W" (name check) over the radio.

c. The communication division then checks the person's name and record for any of the following criteria:

- An arrest for an index (major) crime, sex crime, or weapon possession within New York City within the last 4 years;

- A prior felony or misdemeanor arrest in the New York City transit system within the last 2 years;

- Three or more violation (non-criminal) arrests within the New York City transit system within the last 5 years;

- Three or more unanswered summonses for transit violations (over any period); or

- If they are currently on parole or probation.

d. If any of the above circumstances exist, the communication division radios back "10-18" to the officer, indicating that they are to be arrested.  If none of the above circumstances exist, the communication division radios back "10-19," meaning that no arrest should be made.  In such case the officer issues a civil summons and the person is free to go.

e. Notably, even when an arrest is proper, the policy requires that a DAT (desk appearance ticket) be issued if the person is eligible, rather than the person be taken into custody and held until arraignment.

39.    None of the circumstances necessitating arrest were applicable to Plaintiff.

Plaintiff immediately produced his (valid) identification upon the Officers' demand as soon as he

was stopped on the platform.  Plaintiff had no previous arrests in New York for transit violations

or any other charges, was not on parole or probation, and did not have any active warrants.

40.     Furthermore, there was no reason for Plaintiff to be taken under custody and

escorted to the Station to run his identification.  Not only is it the official policy of the NYPD to

run such checks over the radio, it would have been easier for both Plaintiff and the Officers for

them to do so.  Nor did either of the Officers ever mention any reason why they needed to take

Plaintiff under custody.  Under the totality of the circumstances, and given the established policies

of the NYPD regarding fare evasion, there was no reasonable, non-discriminatory basis for the

Officers to take Plaintiff back to the Station.

41.     Once at the station, under the totality of the circumstances there was no reasonable,

non-discriminatory basis for O'Heir to take down, beat, and handcuff Plaintiff, nor for Plaintiff to

be imprisoned and held until arraignment.

42.     Pursuant to Section 50-h of the General Municipal Law of the State of New York, a

Notice of Claim ("NOC") concerning the events upon which the instant action is founded was

duly served upon City and other instrumentalities of the City and State of New York (including

NYPD through City) on or around September 20, 2017 by certified mail.

43.     Neither City, NYPD, nor any other noticed instrumentality of the City or State of

New York requested an examination of Plaintiff within 90 days of service of the NOC as required

under Section 50-h.

44.     Plaintiff's claim remains unpaid and unadjusted as of the date of this complaint.

45.     Accordingly, Plaintiff has complied with all statutes and laws applicable to City

and NYPD precedent to bringing the present action

### FIRST CAUSE OF ACTION
### (False Arrest and Imprisonment under Section 1983 against O'Heir)

46.     Plaintiff repeats and realleges each and every previous allegation as if fully set

forth herein.

47.     At all relevant times herein, O'Heir were acting under color of state law in his

capacity as a NYPD officer, and his acts were conducted within the scope of his official duties and

employment.

48.     Under New York law, an arrest occurs when an individual is not at liberty to walk

away, regardless of when the arrest is formally made.

49.     Objectively, a reasonable person in Plaintiff's position would have believed he was

not free to walk away after O'Heir took his identification and escorted him under custody to the

Station.

50.     By so doing, O'Heir intentionally arrested and confined Plaintiff.

51.     Plaintiff was aware of such confinement and did not consent to it.

52.     Plaintiff's arrest and confinement were not made pursuant to a lawful warrant.

53.     At the time Plaintiff was taken upstairs under custody, O'Heir did not have

probable cause to believe that Plaintiff had committed a crime necessitating arrest and

confinement.

54.     Specifically, under the official policy of the NYPD, Plaintiff's identification should

have been checked via radio while he was stopped, and thereafter he should have been released

with a civil summons.

55.     Furthermore, under the totality of the circumstances, the period of confinement of

approximately 16 hours was improperly and unnecessarily long.

56.     At all relevant times herein, Plaintiff had a clearly established Constitutional right

under the Fourth and Fourteenth Amendments to be secure in his person from false arrest and

imprisonment.

57.     O'Heir knew or should have known of Plaintiff's rights at the time of the

complained-of conduct.

58.     Nevertheless, O'Heir took the actions complained of herein intentionally, willfully, maliciously, in bad faith, and/or with reckless and wanton disregard to Plaintiff's rights.

59.     Such actions deprived Plaintiff of rights, privileges, and immunities secured by the Constitution and other laws, in violation of Section 1983.

60.     Plaintiff suffered damages as a proximate result of O'Heir's actions, including without limitation pain and suffering, emotional distress, medical and therapeutic expenses, loss of income, reputational injury, and/or such other and further damages as may be ascertained at trial.

61.     Accordingly, Plaintiff seeks judgment against O'Heir for his damages in an amount to be determined at trial, along with punitive damages, interest, attorney's fees, and costs as provided for by Section 1983 and 42 U.S.C. §§ 1988(b) and (c).

## SECOND CAUSE OF ACTION
### (False Arrest and Imprisonment under the New York common law against all Defendants)

62.     Plaintiff repeats and realleges each and every previous allegation as if fully set forth herein.

63.     Under New York law, an arrest occurs when an individual is not at liberty to walk away, regardless of when the arrest is formally made.

64.     Objectively, a reasonable person in Plaintiff's position would have believed he was not free to walk away after the Officers took his identification and escorted him under custody to the Station.

65.     By so doing, the Officers intentionally arrested and confined Plaintiff.

66.     Plaintiff was aware of such confinement and did not consent to it.

67.     Plaintiff's arrest and confinement were not made pursuant to a lawful warrant.

68.     At the time Plaintiff was taken upstairs under custody, the Officers did not have probable cause to believe that Plaintiff had committed a crime necessitating arrest and

11

confinement.

69.     Specifically, under the official policy of the NYPD, Plaintiff's identification should have been checked via radio while he was stopped, and thereafter he should have been released with a civil summons.

70.     Furthermore, under the totality of the circumstances, the period of confinement of approximately 16 hours was improperly and unnecessarily long.

71.     The Officers took the actions complained of herein intentionally, willfully, maliciously, in bad faith, and/or with reckless and wanton disregard to Plaintiff's rights.

72.     In committing this tort, the Officers were acting within the scope of their employment as officers of the NYPD, and as such the NYPD and the City are vicariously liable for their actions.

73.     Plaintiff suffered damages as a proximate result of the Officers' actions, including without limitation pain and suffering, emotional distress, medical and therapeutic expenses, loss of income, reputational injury, and/or such other and further damages as may be ascertained at trial.

74.     Accordingly, Plaintiff seeks judgment jointly and severally against all Defendants for his damages in an amount to be determined at trial, along with punitive damages, interest, attorney's fees, and costs.

### THIRD CAUSE OF ACTION
### (Excessive Force under Section 1983 against O'Heir)

75.     Plaintiff repeats and realleges each and every previous allegation as if fully set forth herein.

76.     At all relevant times herein, O'Heir was acting under color of state law in his capacity as a NYPD officer, and his acts were conducted within the scope of his official duties or employment.

77.     In detaining, arresting, and confining Plaintiff, O'Heir used an amount of force that

was objectively unreasonable in light of the facts and circumstances confronting them.

78.     Specifically, O'Heir threw Plaintiff to the ground, bashed his head against concrete, and pinned him to the ground while handcuffing him, despite Plaintiff's reasonable cooperation throughout his detainment and custody.

79.     At all relevant times herein, Plaintiff had a clearly established Constitutional right under the Fourth and Fourteenth Amendments to be secure in his person from the use of excessive force against him.

80.     O'Heir knew or should have known of Plaintiff's rights at the time of the complained-of conduct.

81.     Nevertheless, O'Heir took the actions complained of herein intentionally, willfully, maliciously, in bad faith, and/or with reckless and wanton disregard to Plaintiff's rights.

82.     Such actions deprived Plaintiff of rights, privileges, and immunities secured by the Constitution and other laws, in violation of Section 1983.

83.     Plaintiff suffered damages as a proximate result of O'Heir's actions, including without limitation pain and suffering, emotional distress, medical and therapeutic expenses, loss of income, reputational injury, and/or such other and further damages as may be ascertained at trial.

84.     Such actions deprived Plaintiff of rights, privileges, and immunities secured by the Constitution and other laws, in violation of Section 1983.

85.     Accordingly, Plaintiff seeks judgment against O'Heir for his damages in an amount to be determined at trial, along with punitive damages, interest, attorney's fees, and costs as provided for by Section 1983 and 42 U.S.C. §§ 1988(b) and (c).

## FOURTH CAUSE OF ACTION
### (Excessive Force under the New York common law against all Defendants)

86.     Plaintiff repeats and realleges each and every previous allegation as if fully set forth herein.

13

87.     In detaining, arresting, and confining Plaintiff, O'Heir used an amount of force that was objectively unreasonable in light of the facts and circumstances confronting them.

88.     Specifically, O'Heir threw Plaintiff to the ground, bashed his head against concrete, and pinned him to the ground while handcuffing him, despite Plaintiff's reasonable cooperation throughout his detainment and custody.

89.     O'Heir took the actions complained of herein intentionally, willfully, maliciously, in bad faith, and/or with reckless and wanton disregard to Plaintiff's rights.

90.     In committing this tort, O'Heir was acting within the scope of his employment as an officer of the NYPD, and as such the NYPD and the City are vicariously liable for his actions.

91.     Plaintiff suffered damages as a proximate result of O'Heir's actions, including without limitation pain and suffering, emotional distress, medical and therapeutic expenses, loss of income, reputational injury, and/or such other and further damages as may be ascertained at trial.

92.     Accordingly, Plaintiff seeks judgment jointly and severally against all Defendants for his damages in an amount to be determined at trial, along with punitive damages, interest, attorney's fees, and costs.

**FIFTH CAUSE OF ACTION**
**(Malicious Prosecution under the New York common law against all Defendants)**

93.     Plaintiff repeats and realleges each and every previous allegation as if fully set forth herein.

94.     The Police Defendants commenced a criminal proceeding against Plaintiff for, *inter alia*, resisting arrest (N.Y. Penal Law § 205.30).

95.     Under Section 205.30, a person is guilty of resisting arrest "when he intentionally prevents or attempts to prevent a police officer or peace officer from effecting an authorized arrest of himself or another person."

96.     At no time during Plaintiff's detention or custody did he attempt or take any actions

that would prevent any officer from effecting an authorized arrest of himself.

97.    The criminal proceeding against Plaintiff was terminated in his favor, in that all of the charges against him (including resisting arrest) were dropped and Plaintiff was sentenced to a non-criminal violation and time served.

98.    The Officers lacked probable cause to charge Plaintiff with resisting arrest, in that they did not have a reasonable basis to believe Plaintiff had attempted or taken any actions that would prevent them from effecting an authorized arrest.

99.    The charges brought against Plaintiff were brought out of actual malice.

100.    In committing this tort, the Officers were acting within the scope of their employment as officers of the NYPD, and as such the NYPD and the City are vicariously liable for their actions.

101.    Plaintiff suffered damages as a proximate result of the Officers' actions, including without limitation pain and suffering, emotional distress, medical and therapeutic expenses, loss of income, reputational injury, and/or such other and further damages as may be ascertained at trial.

102.    Accordingly, Plaintiff seeks judgment jointly and severally against all Defendants for his damages in an amount to be determined at trial, along with punitive damages, interest, attorney's fees, and costs.

## SIXTH CAUSE OF ACTION
### (Discrimination under Section 1983 against O'Heir)

103.    Plaintiff repeats and realleges each and every previous allegation as if fully set forth herein.

104.    At all relevant times herein, O'Heir was acting under color of state law in his capacity as a NYPD officer, and his acts were conducted within the scope of his official duties and employment.

105.    42 U.S.C. § 1981(a) provides that all persons within the jurisdiction of the United

States shall have the same right to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

106.     As detailed herein, Plaintiff received disparate treatment from O'Heir throughout his detainment, custody, arrest, and imprisonment than would have been received by a similarly-situated white citizen of the United States.

107.     Plaintiff's actual or perceived race, ethnicity, nationality, citizenship status, and/or religion were a motivating factor for such disparate treatment.

108.     At all relevant times herein, Plaintiff had a clearly established right under Section 1981 and the Fourth and Fourteenth Amendments to equal protection under the law and equal benefit of all laws and proceedings without regard to his race, ethnicity, nationality, or religion.

109.     O'Heir knew or should have known of Plaintiff's rights at the time of the complained-of conduct.

110.     Nevertheless, O'Heir took the actions complained of herein intentionally, willfully, maliciously, in bad faith, and/or with reckless and wanton disregard to Plaintiff's rights.

111.     Such actions deprived Plaintiff of rights, privileges, and immunities secured by the Constitution and other laws, in violation of Section 1983.

112.     Plaintiff suffered damages as a proximate result of O'Heir's actions, including without limitation pain and suffering, emotional distress, medical and therapeutic expenses, loss of income, reputational injury, and/or such other and further damages as may be ascertained at trial.

113.     Accordingly, Plaintiff seeks judgment against O'Heir for his damages in an amount to be determined at trial, along with punitive damages, interest, attorney's fees, and costs as provided for by Section 1983 and 42 U.S.C. §§ 1988(b) and (c).

## SEVENTH CAUSE OF ACTION
### (Bias-Based Profiling under the New York Civil Rights Law against all Defendants)

114.    Plaintiff repeats and realleges each and every previous allegation as if fully set forth herein.

115.    The Officers are law enforcement officers as defined in Subparagraph (a)(2) of the New York Civil Rights Law.

116.    In taking the actions herein described, the Officers intentionally engaged in bias-based profiling of Plaintiff, as defined in Subparagraph (a)(1) of the New York Civil Rights Law.

117.    Specifically, in detaining, arresting, beating, confining, and recommending charges against Plaintiff, the Officers relied on Plaintiff's actual or perceived race, national origin, religion, color, and/or citizenship status.

118.    As detailed herein, the actions at issue were not justified by factors unrelated to unlawful discrimination.

119.    Accordingly, Plaintiff seeks declaratory and injunctive relief against all Defendants that the Officers engaged in unlawful profiling and permanently enjoining them from further unlawful profiling, as well as attorney's fees and costs as provided for by Subparagraph (d)(3) of the New York Civil Rights Law.

## EIGHTH CAUSE OF ACTION
### (Assault under the New York common law against all Defendants)

120.    Plaintiff repeats and realleges each and every previous allegation as if fully set forth herein.

121.    O'Heir threatened physical harm against Plaintiff in the form of threatening gestures, words, and other actions.

122.    These threats of physical harm were made with the intent to actually make physical contact with Plaintiff.

17

123.     The physical contact threatened by O'Heir was intended to injure Plaintiff.

124.     In committing this tort, O'Heir was acting within the scope of his employment as an officer of the NYPD, and as such the NYPD and the City are vicariously liable for his actions.

125.     Plaintiff suffered damages as a proximate result of O'Heir's actions, including without limitation pain and suffering, emotional distress, medical and therapeutic expenses, loss of income, reputational injury, and/or such other and further damages as may be ascertained at trial.

126.     Accordingly, Plaintiff seeks judgment jointly and severally against all Defendants for his damages in an amount to be determined at trial, along with punitive damages, interest, attorney's fees, and costs.

### NINTH CAUSE OF ACTION
### (Battery under the New York common law against the Abuse Defendants)

127.     Plaintiff repeats and realleges each and every previous allegation as if fully set forth herein.

128.     O'Heir intentionally made nonconsensual physical contact with Plaintiff.

129.     Such physical contact was made with the intent to cause Plaintiff harm.

130.     In committing this tort, O'Heir was acting within the scope of his employment as an officer of the NYPD, and as such the NYPD and the City are vicariously liable for his actions.

131.     Plaintiff suffered damages as a proximate result of O'Heir's actions, including without limitation pain and suffering, emotional distress, medical and therapeutic expenses, loss of income, reputational injury, and/or such other and further damages as may be ascertained at trial.

132.     Accordingly, Plaintiff seeks judgment jointly and severally against all Defendants for his damages in an amount to be determined at trial, along with punitive damages, interest, attorney's fees, and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, it is respectfully requested that the Court assume jurisdiction herein and thereafter Plaintiff demands a trial by jury and judgment against Defendants as follows:

    a. Damages in an amount to be determined at trial, including without limitation pain and suffering, emotional distress, medical and therapeutic expenses, loss of income, reputational injury, and/or such other and further damages as may be ascertained at trial;

    b. Punitive damages;

    c. Declaratory relief that the Officers' actions were discriminatorily motivated in violation of Plaintiff's rights under the New York Civil Rights Law;

    d. An order permanently enjoining the Police Defendants from discriminatorily detaining, arresting, and/or confining citizens on the basis of actual or perceived race, nationality, religion, color, citizenship status, or other improper basis;

    e. Pre- and post-judgment interest; and

    f. Plaintiff's costs and reasonable attorney's fees;

Together with such other and further relief as the Court deems just.

Dated: Brooklyn, New York
       January 8, 2020

                         Law Office of Alex Klein, PLLC.

                    By: _____/s/_____
                        Alex Klein, Esq.
                        3105 Church Street
                        Brooklyn, New York 11226
                        (718) 462-8700
                        *Attorney for Plaintiff*